IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARY CHRISTINA WILMOTH
and ROBERT MATTHEW WILMOTH

      Plaintiffs,

v.

SN SERVICING CORPORATION,

      Defendant.

Civil Action No. 3:20-cv-967

## COMPLAINT

COME NOW Plaintiffs, Mary Christina Wilmoth and Robert Matthew Wilmoth ("Plaintiffs"), by counsel, and file this Complaint against SN Servicing Corporation ("SN Servicing"). Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1. This case demonstrates that, as the entities that perform the day-to-day management of loans, "servicers can have a direct and profound impact on borrowers."[1] In this case, even though Plaintiffs fully and timely paid their mortgage each month, the servicer of their home loan treated their payments as late while assessing late charges, excess interest, and default related fees to their account.

2. It appears that SN Servicing's multitude of errors stems from a mistake in the record of the prior servicer of Plaintiffs' account. This initial mistake was compounded by SN Servicing's own errors and noncompliance with federal law. To be clear, at all times that SN Servicing serviced

---

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

the loan, Plaintiffs were current on their monthly mortgage. Nonetheless, SN Servicing has treated them as delinquent and refused to correct the errors in their account.

3. A homeowner should not have to file a lawsuit in order to correct servicer errors. Indeed, Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, in part, to protect consumers from the type of abusive and inaccurate servicing practices used by the servicers of Plaintiffs' home loan. Consistent with its consumer protection purposes, RESPA imposes mandatory duties on mortgage servicers, including specific requirements related to the investigation and correction of errors. 12 U.S.C. § 2605.

4. Plaintiff alleges claims against SN Servicing for its numerous violations related to its duties under RESPA, 12 U.S.C. § 2605. RESPA provides for actual damages, statutory damages, costs, and attorney's fees for violations of certain mortgage servicer duties. The imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve the consumer protection purposes of RESPA because home mortgage servicers are incentivized "to look for opportunities to impose fees on borrowers to enhance revenues."[2] Indeed, this case exemplifies the type of far reaching consequences noncompliance with RESPA can have on a homeowner. Here, SN Servicing has profited from assessing late fees and other charges, while laying a false foundation to foreclose on Plaintiffs' home.

5. Finally, Plaintiffs allege claims against SN Servicing for its violations of §§ 1692e and 1692f of the FDCPA for its conduct of making false and misleading representations regarding the mortgage account.

---

[2] *Id.*

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1692k.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Plaintiff Mary Christina Wilmoth is a natural person.

9. Plaintiff Robert Matthew Wilmoth is a natural person.

10. SN Servicing Corporation is a mortgage servicing company with a principal place of business in Baton Rouge, Louisiana.

## FACTS

### *Plaintiffs' Bankruptcy Proceedings*

11. This case concerns the Wilmoths' mortgage on their home in Chesterfield, Virginia.

12. The Wilmoths took out the mortgage on their home in 2005 with Citibank, F.S.B.

13. In August 2014, the Wilmoths filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia.

14. At that time, the Wilmoths still owed an outstanding balance on their mortgage, which had been transferred by Citibank, F.S.B. to Wilmington Savings Fund Society, FSB[3] and was serviced by Fay Servicing.

15. In their proposed Chapter 13 Plan, the Wilmoths proposed that their regular payments would be made on their home mortgage in the amount of $796.32.

---

[3] The note holder was Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for GFT Mortgage Loan Trust, Series 2013-1.

3

16. Thus, by successfully completing their Chapter 13 Plan, the Wilmoth's would become current on their mortgage and would continue to be responsible for their monthly payments.

17. However, Wilmington Savings Fund Society mistakenly objected to the Chapter 13 Plan, incorrectly claiming that the monthly payment was $914.31 instead of the $796.32 provided for in the Wilmoths' proposed plan.

18. The Wilmoths filed a Response to the objection, explaining that Wilmington Savings Fund Society contained incorrect and inflated information regarding the amount of the real estate taxes on the property. Additionally, Wilmington Savings Fund Society's escrow analysis attempted to back-date the change in the payment amount in violation of the Bankruptcy Rules.

19. Wilmington Savings Fund Society subsequently withdrew its objection to the Chapter 13 Plan. And, in its withdrawal, it stated "The instant Withdrawal of Objections is based on the finding that the proposed monthly payment in the plan is accurate." In other words, Wilmington Savings Fund Society conceded that its objection was in error and that the Wilmoths accurately provided for the correct monthly payments in their proposed plan.

20. The Chapter 13 Plan was subsequently confirmed on December 9, 2014.

21. The Wilmoths continued to timely make their mortgage payments in full each month in accordance with the Chapter 13 Plan.

22. Nonetheless, in February 2016, Wilmington Savings Fund Society moved for relief from the automatic stay for the purpose of enforcing the Note and Trust "including but not limited the right to foreclose" on the Wilmoths' home.

23. The Wilmington Savings Fund Society's motion for relief from the automatic stay was based on an erroneous claim that the Wilmoths had missed three of their mortgage payments and were past due in the amount of $2,152.58.

24. After the Wilmoths' provided evidence of their timely payments, the Wilmington Savings Fund Society withdrew its motion for relief from the automatic stay.

25. In early 2017, the ownership of the Wilmoths' mortgage was transferred from Wilmington Savings Fund Society to U.S. Bank.[4] Accordingly, servicing of the mortgage was transferred from Fay Servicing to SN Servicing.

26. After the servicing of the loan was transferred to SN Servicing in February 2017, the Wilmoths continued to timely and fully pay the amount due on their mortgage each month to SN Servicing.

27. However, at the time of the transfer of the servicing, Fay Servicing and SN Servicing treated the Wilmoths as if they were in default.

28. For example, it appears that in the transferring of the servicing of the loan, Fay Servicing's prior errors were adopted and compounded by SN Servicing. This became apparent in September 2019 when the Wilmoths' bankruptcy proceeding was in its final stages.

29. U.S. Bank filed a Response to Notice of Final Cure Payment on September 5, 2019, erroneously claiming that the Wilmoths were three payments behind on their mortgage and subsequently owed an outstanding amount of $2,461.92. A payment history was provided by U.S. Bank to support its assertion. Upon information and belief, this payment history was from SN

---

[4] The full name of the note holder was U.S. Bank Trust National Association, as Trustee of the IGSC Series II Trust.

Servicing's records, and it contained the same errors that Wilmington Savings Fund Society had already conceded to be incorrect.

30. The Wilmoths filed a response to U.S. Bank's Response to Notice of Final Cure Payment explaining that it had been making full and timely payments each month.

31. The Wilmoths' response included detailed information regarding the amount of the payments that were due each month and the amount they paid. The Wilmoths attached proof of their payments.

32. It appears that from the time SN Servicing took over the servicing of the Wilmoths' loan that it incorrectly treated each payment as late and erroneously assessed a late fee to the Wilmoths' account each month. To be clear, even though the Wilmoths were not behind on their mortgage and made timely payments each month, SN Servicing wrongly treated their payments as late, assessed late fees, and refused to properly credit their payments. This behavior continues to date.

33. The Wilmoths' bankruptcy case was completed on August 26, 2019; they were subsequently discharged on November 4, 2019; and the case was closed on February 19, 2020.

### *SN Servicing's Failure to Correct its Records and Plaintiffs' Qualified Written Requests and Notices of Errors*

34. The current status of Plaintiffs' home mortgage is very simple. At the discharge of Plaintiffs' bankruptcy, Plaintiffs were completely up to date on their mortgage because (1) the bankruptcy plan brought them current on any pre-filing outstanding balances and (2) they timely and fully made all payments post-filing. Plaintiffs are able to provide proof of all their payments and have repeatedly provided this information to SN Servicing and the prior servicer of their home loan.

35. Nonetheless, SN Servicing has repeatedly failed to correct its records to reflect that Plaintiffs are current on their mortgage. Instead, SN Servicing has erroneously treated each payment as late and wrongfully assessed late charges, causing their records to become an incomprehensible mess that does not accurately reflect the status and history of the account.

36. For example, in February and March 2020, immediately following the discharge and when the current status of Plaintiffs' account was most apparent, SN Servicing sent Plaintiffs a monthly statement falsely claiming that their account was over 60 days delinquent and stating they must pay more than $4,000 to bring their account current (even though they only owed around $800 for that month).

37. SN Servicing has sent Plaintiffs several monthly statements and other communications inaccurately representing the status of the debt and amount due.

38. On or around February 21, 2020, Plaintiffs sent SN Servicing a Qualified Written Request and Notice of Error informing SN Servicing of the errors in their account. Plaintiffs requested that SN Servicing correct the account and confirm that they were current on their loan through February 2020.

39. Plaintiffs also requested specific information in the February 2020 letter including: invoices related to an "attorney fee" they were charged on their mortgage statement; an explanation of all late fees on the account totaling $442.04 on their statement; all servicing notes from the loan file; and all late charges and other expenses assessed to account since SN Servicing took over the servicing of the account.

40. Plaintiffs never received any communication from SN Servicing for further information associated with any investigation of the February 2020 Notice of Error and Qualified Written Request.

41.     SN Servicing responded with a letter dated April 3, 2020, that was written by an attorney, William A. Fogelman.

42.     Based on the face of the letter from Mr. Fogelman, it appears that no investigation was made into the errors in Plaintiffs' account and that Mr. Fogelman instead just consulted the records Plaintiffs had already informed him were incorrect. For example, Mr. Fogelman stated, "Our records show the loan is due for the January 1, 2020 payment . . . ."

43.     Mr. Fogelman also ignored Plaintiffs' requests for information without explanation. For example, he did not provide any invoice or explanation of the "attorney fee" that was included in their mortgage statement. Nor, did he state any reason for the unavailability of the information. Plaintiffs specifically asked for an explanation of the $442.04 in late fees on their account, Mr. Fogelman failed to address it. Plaintiff also asked for an explanation of all late charges and other expenses that were assessed to the account. While the payment history would reflect late charges, it is unclear from Mr. Fogelman's response what other expenses and default related fees have been assessed to the account in addition to the "attorney fee" that Plaintiffs noticed on their mortgage statement.

44.     Instead of providing the information Plaintiffs requested, Mr. Fogelman attached the Response to Notice of Final Cure Payment from the Bankruptcy Proceedings that had already been discredited by Plaintiffs through their detailed briefing and evidence in the bankruptcy proceeding.

45.     Plaintiffs sent a follow up Notice of Error and Qualified Written Request to SN Servicing on or around April 20, 2020. Plaintiffs renewed the dispute that they had timely paid all of their payments on time, and they directed SN Servicing to review the docket history of the bankruptcy proceeding where proof of the payments was provided. Plaintiffs provided their phone

number and asked for SN Servicing to call if they would like them to provide additional proof of the payments. Plaintiffs also asked that SN Servicing respond to the requests for information in their previous letter that Mr. Fogelman ignored.

46. Plaintiffs never received any communication from SN Servicing as part of an investigation into their April 2020 qualified written request.

47. SN Servicing responded with a letter dated June 8, 2020, that was written again by attorney, Mr. Fogelman.

48. Mr. Fogelman's response did not differ substantially from his previous letter.

49. Again, from the face of Mr. Fogelman's letter it appears that no investigation was made into the accuracy of SN Servicing's records, as Mr. Fogelman's letter repeatedly states that his response is based on SN Servicing's records.

50. Mr. Fogelman again ignored Plaintiffs' requests for information.

51. Plaintiffs sent another qualified written request to no avail in June 2020.

52. In one last attempt to correct the errors in their account Plaintiffs sent another qualified written request to SN Servicing dated September 17, 2020.

53. Because it is unclear from SN Servicing's documents and letters which payments it believes Plaintiffs first missed, Plaintiffs letter includes a detailed description of their entire payment history.

54. *First*, Plaintiffs accounted for all payments from the time they took out the loan in **2005 through August 20, 2014** when they filed for bankruptcy. Because U.S. Bank conceded in the bankruptcy proceedings that Plaintiffs paid in full the amount to cure any prepetition default on the creditors claim, there should be no dispute that Plaintiffs were current on their mortgage for all payments from 2005 to August 2014.

55. ***Second***, Plaintiffs attached proof of all payments made on the account from **September 2014 through January 2017**. Plaintiffs also included a detailed description of this payment history to assist SN Servicing in understanding that Plaintiffs' evidence demonstrated that they were current on all payments from September 2014 through January 2017. This included an explanation of the amount that was due each month.

56. ***Third,*** Plaintiffs explained that SN Servicing's payment history that was previously provided to them demonstrated that Plaintiffs made their monthly payments for the months of **February 2017 through August 2020**.

57. ***Therefore***, Plaintiffs provided SN Servicing everything it would have already discovered if it had fulfilled its RESPA investigative duties in response to Plaintiffs' previous qualified written requests and notices of errors. Additionally, Plaintiffs provided a detailed explanation establishing the errors in SN Servicing's records.

58. Plaintiffs thus requested that SN Servicing make appropriate corrections to their account, to remove all late charges and excess interest that was charged to their account, and to properly apply their payments.

59. Plaintiffs also requests specific information from SN Servicing so that Plaintiffs could understand the charges to their account and determine whether the charges and fees were valid. This information included: an explanation of the "Legal Fee Assessment" and "Attorney Fee" that was assessed to their account; all related invoices from attorneys; an itemized list of all default related fees that were assessed to the account; and any invoices related to any default related fees.

60. Plaintiffs never received any communication from SN Servicing as part of an investigation into their September 2020 qualified written request.

61. SN Servicing responded with a letter dated November 23, 2020, that was written again by attorney, Mr. Fogelman.

62. Mr. Fogelman's response did not differ substantially from his previous letter.

63. Again, from the face of Mr. Fogelman's letter, it appears that no investigation was made into the accuracy of SN Servicing's records, as Mr. Fogelman's letter repeatedly states that his response is based on SN Servicing's records.

64. Additionally, Mr. Fogelman either did not review Plaintiffs' explanation of the error on their account and proof of payments or he chose to ignore it in favor of blindly relying on SN Servicing's flawed records.

65. For the first time, Mr. Fogelman identifies where SN Servicing believes Plaintiffs' fell behind on their mortgage. He states, "The record shows that the first post-petition payment was not made. In addition, the payments made post-petition were not sufficient to pay the principal interest and escrow due."

66. Thus, according to Mr. Fogelman's letter, it appears that SN Servicing is relying on the same mistake in the prior servicer's records that caused Wilmington Savings Fund Society to erroneously object to the Chapter 13 plan and move to foreclose on Plaintiffs. *See supra* ¶¶ 17-19, 22-24.

67. Had SN Servicing conducted an investigation beyond the inaccurate records which Plaintiffs challenged in their numerous qualified written requests, SN Servicing would have discovered that Plaintiffs were current on their mortgage.

68. Indeed, Plaintiffs' final qualified written request included a detailed history of this inaccuracy in the prior servicer's records, which could have been confirmed by SN Servicing, including by a review of the filings in the bankruptcy proceedings.

69. In addition to failing to conduct an investigation into the errors, SN Servicing failed to make appropriate corrections and ignored Plaintiffs' requests for information.

### *SN Servicing is a Debt Collector*

70. SN Servicing is a mortgage servicing company who specializes in servicing delinquent mortgages.

71. Upon information and belief, SN Servicing regularly demands payment from consumers of claimed arrearages and provides consumers reinstatement quotes and itemizations of amounts that SN Servicing is attempting to collect. SN Servicing did so as to the Plaintiffs.

72. At the time SN Servicing's servicing began, it considered the Plaintiffs' mortgage delinquent and, thus, SN Servicing does not fall within the mortgage servicing exception to the definition of a debt collector. *See* 15 U.S.C. § 1692a(6).

### COUNT ONE:
### Violation of RESPA, 12 U.S.C. § 2605(k)(1)(C)

73. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

74. Plaintiffs contacted SN Servicing on numerous occasions, and informed SN Servicing of its failure to provide standard servicer duties.

75. These errors included SN Servicing's failure to correctly allocate payments, to send accurate monthly statements, and to investigate the errors in the account.

76. SN Servicing failed to take timely action to correct the errors in Plaintiffs' account.

77. As a result of SN Servicing's conduct, Plaintiffs suffered concrete and particularized harm, including: the incurring of unnecessary fees and interest on their mortgage account, default related assessments, and emotional distress, including aggravation and stress from their home being placed in jeopardy by SN Servicing's conduct.

78. Plaintiffs are entitled to recover actual damages, statutory damages, costs, and attorney's fees from SN Servicing for each of its violations of 12 U.S.C. § 2605(k) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT TWO:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)

79. Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

80. As alleged, Plaintiffs submitted several qualified written requests to SN Servicing, and SN Servicing received each request.

81. SN Servicing violated 12 U.S.C. § 2605(e)(2) on multiple occasions. Without limitation, SN Servicing's violations of 12 U.S.C. § 2605(e)(2) include: failing to conduct an adequate investigation in responding to each of their qualified written requests; failing to make appropriate corrections; failing to provide the information requested; and failing to provide an explanation of the unavailability of information requested.

82. As alleged herein, SN Servicing reached conclusions in its responses that contradicted the proof of payment provided by Plaintiffs without any explanation.

83. From the face of Mr. Fogelman's letters, it appears that SN Servicing failed to conduct an investigation into the errors raised by Plaintiffs, and it instead relied on the inaccurate records Plaintiffs challenged. Further, SN Servicing's written response provided Plaintiffs with incomplete and one-sided information and failed to provide the requested information.

84. In violation of RESPA, SN Servicing did not fulfill its investigative obligations under 12 U.S.C. § 2605(e) and failed to make necessary corrections.

85. Plaintiffs qualified written requests sought information that would have helped them understand the fees charged to their account and the validity and appropriateness of such fees.

86. As a result of SN Servicing's violations of 12 U.S.C. § 2605(e)(2), Plaintiffs suffered concrete and particularized harm, including the deprivation of information to protect their interests in their home; the incurring of unnecessary fees and interest on their mortgage account; default related assessments on their mortgage account; and other emotional distress.

87. Upon information and belief and based on SN Servicing's repeated violations here, SN Servicing's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

88. Plaintiffs are entitled to recover actual damages, statutory damages, costs, and attorney's fees from SN Servicing for each of its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT THREE:
## FDCPA, 15 U.S.C. § 1692e

89. Plaintiffs incorporate each of the allegations set forth in the preceding paragraphs.

90. SN Servicing violated 15 U.S.C. § 1692e by repeatedly using false, deceptive, and misleading representations or means in connection with the collection of the home mortgage account.

91. By its conduct, SLS used false and deceptive means to collect or attempt to collect on the loan.

92. For example, on numerous communications, SN Servicing misrepresented the status of the loan and the amount owed by Plaintiffs in an attempt to collect on their mortgage account.

93. SN Servicing made these communications even after being informed by Plaintiffs that they were current on their mortgage.

94. SN Servicing knew or should have known that it was making false representations regarding the status and amount of the debt that was owed.

95. Upon information and belief, SN Servicing's abusive noncompliance is a part of a persistent and widespread practice.

96. Plaintiffs suffered actual damages as a result of SN Servicing's violations of § 1692e, including the incurring of additional debt secured by real property and/or the payment of fees and emotional damages.

97. Based on SN Servicing's noncompliance with § 1692e, Plaintiffs are entitled to recover actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT FOUR:
## FDCPA, 15 U.S.C. § 1692f

98. Plaintiffs incorporate each of the allegations set forth in the preceding paragraphs.

99. SN Servicing violated 15 U.S.C. § 1692f by the use of unfair or unconscionable means to collect or attempt to collect a debt.

100. For example, on numerous occasions, SN Servicing charged excess interest, late charges, and other fees to Plaintiffs' mortgage account and attempted to collect such amounts from her even though it had no legal right to do so. SN Servicing also claimed Plaintiffs were delinquent on their home loan and that failure to bring their mortgage current by paying the demanded amount could result in the foreclosure of their home, even though Plaintiffs were in fact current on their mortgage and SN Servicing had not right to foreclose.

101. When Plaintiffs informed SN Servicing of the mistake in its records, SN Servicing refused to correct the mistake, even in the face of Plaintiffs' proof of payments.

102. SN Servicing knew or should have known that Plaintiffs were current on their mortgage because Plaintiffs made their full and timely payments each month, and SN Servicing is a mortgage servicing company with a responsibility to keep records of such payments.

103. Upon information and belief, SN Servicing's abusive noncompliance is a part of a persistent and widespread practice.

104. Plaintiffs suffered actual damages as a result of SN Servicing's violations of § 1692f, including the incurring of additional debt secured by real property and/or the payment of fees and emotional damages.

105. Based on SN Servicing's noncompliance with § 1692f, Plaintiffs are entitled to recover actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

**WHEREFORE**, Plaintiffs demand judgment for actual, statutory, and punitive damages against; their attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**MARY CHRISTINA WILMOTH and ROBERT MATTHEW WILMOTH**

By: ____/s/ Kristi C. Kelly____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572

(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiffs*